We're ready to hear argument on our next case, Mason v. Machine Zone, Inc. Mr. Tevesky, is that correct? Tevesky, yes. Tevesky. Good morning, and may it please the Court. I'd like to start by clearing up the misconception that I think led the District Court astray here and that my friend will no doubt continue to raise today. And that's the idea that this case is about fantasy money in a fantasy video game. And it isn't. The money that my client, Liam Mason, lost to Machine Zone at Machine Zone's unlicensed, unlawful gambling game is very, very real. And Machine Zone has made a lot of money. Why didn't you lose money in the virtual casino? That's what I'm having trouble with your argument. Sure. So Machine Zone's game revolves around their in-game currency. It's kind of like store credit. They call it gold. And they call their game free-to-play, but it's really not. The gold here is... To tie it to the statute, she's got to lose money at a gaming device. So what's the gaming device? The gaming device here is the Game of War casino. It's the wheel of fortune that's within the game. It's the casino. That's correct, Your Honor. So how did she lose money at the casino? The gold that she lost is effectively as good as money in the Game of War casino. It's the same as if... But only in the Game of War casino. It's not as good as money in this world. That doesn't matter under this statute, Your Honor. And, in fact, it hasn't mattered for two centuries. So in Hook v. Boteter, which is the precedent it referred... is a holding of the Maryland highest court under the predecessor to this statute 200 years ago, the question was, can someone who paid out gambling debts in goods or in store credit recover the money that they lost gambling? The answer is yes. And that case has been cited over and over again as the latest... With store credit, I mean, if you go in with store credit, then the company has to fulfill the store credit. And if you don't, it wins something. But in this case, how was Machine Zone affected after the fact? I mean, you paid however much money you paid to get this virtual gold stuff. I mean, Machine Zone's out of it after that, aren't they? No, Your Honor. It's the same thing. They have an obligation to provide the service that they provide. In this case, it's entertainment. The same way that if you buy a gift certificate to a movie theater or Apple's iTunes gift cards, right? They don't have to give you a real thing. What they give you... But she was paying for entertainment then, I think is what Judge Aitken said. She was. Excuse me. Okay. So the gold is worth entertainment. Entertainment, as the Maryland Court of Appeals recognized in Gaither, is a thing of value that can be gambled or, more accurately, can't be gambled because it's unlawful to do so. The entertainment that she got, to the degree that it's gambling, is unlawful. And if she paid money and got gambling, then she is entitled to get that back. It would seem like it would require somebody to win something and somebody to lose something. How does Machine Zone ever lose anything? The whole purpose of their... You have two options in the game of war casino. You can, when you buy gold, you can exchange it for the valuable things that Machine Zone sells. We know they're valuable because Machine Zone sells them for money and people buy them for money. That's the meaning of whether something has value or something doesn't have value. So people are willing to pay for these virtual swords. They may seem silly, but they are valuable. They only have value in the virtual world. Just as a... I can't use a virtual sword out here in the real world. No, Your Honor, and you can't use a movie either. You can't use a... You can watch a movie. And you can play a game, Your Honor, and that's exactly... There's no difference here. It's just the character of the entertainment. It's a difference. But aren't you arguing a little bit of an inconsistency here because what you're saying is in the virtual casino, the plaintiff can lose money, but the plaintiff can never win money. The plaintiff can win something of value. But cannot win money. The statute... You're saying it's a one-way street. You can't win money, but you can lose money. And how can that be? What you can win and lose. So you win a thing of value, something that you want and would otherwise pay money for. You lose a thing of value that costs you money. There is money that was in Ms. Mason's pocket, is not in Ms. Mason's pocket anymore. And the way that... That's all on your client, though. What loss does Machine Zone ever have? How are they ever exposed to loss? There is no requirement in the statute, as far as I can tell, that Machine Zone be exposed to loss. In Gaither v. Cate, for example, the machine at issue sold mints. You put in a nickel, you got a mint, and you also got a variable amount of entertainment. You got a bunch of worthless tokens that said, for entertainment value only. Okay. That was dicted, though, in the opinion. Wasn't the court more interested in the fact that these slugs could be used in vending machines and other kinds of situations to essentially get something for nothing? No, Your Honor. Exactly the reverse. The part about the vending machines and the pay phones, that's what's dicta. The court is very, very clear that regardless of whether or not you could use those slugs in a pay phone or not, that even if the entertainment, even if what you get is just the spinning of the wheels, the fact that one operator of the machine gets more entertainment and another operator of the machine gets less entertainment for the same nickel, that makes it gambling. I don't think you answered Judge Keenan's question earlier about whether your client could win money. You're saying she lost money, but could she win money? She can't. So she can win a thing of value. Okay. So she cannot win money. What she can do, so we know that what she wins is worth money. We know that because machines don't sell it for money. We know that she can also sell it on a secondary market to get money. Did she ever try to sell it on a secondary market? No, Your Honor, but that's not relevant. Is there any allegation in your complaint that she or any of the other putative class members tried to sell it on a secondary market? The importance of the secondary market is to demonstrate the value. Is there an answer, though, to the question? Is that at all alleged in your complaint? We do not allege that. Right now this is a 12B6, so the only allegations relevant are as to Ms. Mason herself. And, no, Ms. Mason did not try to sell it on a secondary market. Okay. And what about the terms of service that I think you attached to your complaint at JA39 that says these virtual goods and virtual currency may never be redeemed for real-world money, goods, or other items of monetary value from a machine's owner or any other person? What about that? I understand that it says that. The question here, though, is whether or not the gold at issue, whether or not what she lost, what she gambled with, is a thing of value. I understand that the contract says that you can't sell it for value, but there are lots of things that legally speaking. You just said that she could sell it for value on the secondary market. Just like you can sell drugs for value, Your Honor. That's illegal. But you can't. So this Court and the Maryland Court of Appeals have repeatedly recognized the value, of unlawful narcotics. They have no value. They're the state's property, right? But the question here is whether or not these are things of value, whether they have a market value. And they do. It's undeniable that under the secondary market you can sell it for money. Machines don't like you. Not too short. Is it forbidden by the contract? Sure. But you can still do it. There are people willing to buy and there are people willing to sell. And that shows that this is a thing that has value. If it's undeniable, perhaps it should have been in your complaint, allegations. So we did allege the existence of the secondary market and the fact that it can be bought and sold on the secondary market. That's what demonstrates that they have value. It's not necessary that Ms. Mason have actually tried to do that or done that to demonstrate that the items are valuable. Just like we can understand that a car has value even if I didn't try to sell the car. I think that perhaps the best way, as I said, to look at the losing money analogy is a store credit. Suppose Walmart opens a casino in one of their stores. You buy a Walmart gift card. And either you can go and buy a toaster or you can gamble it at their casino. Does it have to be store credit in your example at a retailer's casino? What about store credit for shoes? Sure. Store credit for anything is worth the value that it's denominated. You can't change those things in for money. As I said, I alluded to Apple earlier. But you can get real world goods with store credit. I don't think that there is a difference, honestly. When you look at, I think, looking at digital goods, for example. There's a lot of difference between what any person can get in the real world with an asset and what only is available in this alternative universe of gaming that has no application in the real world. Because the application is entertainment, which is valuable, as Maryland Court of Appeals has authoritatively stated repeatedly. Why do we care about whether these are things of value? The statute talks about money. It doesn't talk about things of value. It just talks about money. The gaming device portion of the statute discusses things of value. The person who loses money at a gaming device that is prohibited by this subtitle may recover the money as if it were a common debt. That's correct, Your Honor. However, the statute requires that it be interpreted liberally and not strictly and narrowly. Right, but that's if there's an ambiguity. Money is an unambiguous term. Respectfully, Your Honor, it's not. For example, at a traditional bricks-and-mortar casino, I don't put down a $20 bill. I put down casino chips, which are a promise by the casino. It's a credit arrangement with the casino. We're talking about a statute that uses a specific word, money. How is that ambiguous? Because if it really meant only cash money, then putting down a chip at a casino wouldn't qualify. Store credit, as in hook fee bond, also wouldn't qualify. And we know that these things do qualify as, you know, if it doesn't. If the statute doesn't prohibit unlawful casinos, it doesn't prohibit anything, right, and as far as store. What does that have to do with the definition of money? That's the question Judge Keenan is asking. The phrase, Your Honor, is lose money, and the question is, for lose money, is whether she had money before, and now she doesn't have money, and the way that she doesn't have money is by operation of gambling, which is unlawful in the state of Maryland. The whole point of this statute is to ensure that people can't make money off of gambling, to put the owners of illegal gambling establishments on notice, that it's not going to be profitable for them to run their illegal gambling enterprise, and the way that the state of Maryland has chosen to do that is to say, if you're exciting the gambling spirit, which I know is old-fashioned language, but it's been used recently, if you're enticing people to part with their money based on a gambling game, then those people are entitled to recover it, and they've repeatedly rejected the idea that you can dress it up as something else, right, that you can dress up gambling as selling coupons or selling mints or, as in this case, making up three different layers of virtual currency in order to get at the same thing, which is gambling that is unlawful and that the state has an interest in prohibiting. I see that my time has expired. We've got some time left under rebuttal. Mr. Berta. Thank you, Your Honors. May it please the Court. So we believe the question here is whether or not a make-believe casino in an online fantasy computer, essentially war game, is criminal gambling under the statutes of Maryland for purposes of the Loss Recovery Act, and it is argued that it is not. I think that the questions that you have asked here are exactly right because there's two different issues going on. One is, under the loss recovery statute, whether someone loses money at a gaming device. So the first question, setting aside, there was a discussion of the Gaither case, setting aside whether or not entertainment has value, and I think there's a lot of things to be said about that as to whether or not game or casino is a gaming device, which is what most of the authority is talking about and most of the argument is about. It doesn't matter because you are not losing money at that gaming device here. As the complaint pleads, what goes in in the fantasy casino is a resource called chips, and what comes out of the fantasy casino is other resources that you can use inside the game to do whatever it is. So chips are not money, and chips are not convertible into money. The argument is made, well, you get chips by buying gold inside the game, and then you can convert the gold into the chips. But in-game gold also is not money. It's not what you lost in the casino if there was such a loss, and it's also not money itself. And so with no actual money being lost, Title 12, Section 110 just does not apply. What about the fact that the Maryland statute at 12.113 says that courts are to construe the statute liberally, and should we construe it so liberally as to consider this virtual gaming device gambling, given that times are changing? So I guess there's a couple different ways in which liberal construction could play in here. One is whether or not you decided to be a gaming device, and I think I want to address that. And I think in that circumstance where whether something is a gaming device, it talks about whether there's something being wagered that is of value, that that is looser language, and that if you look at the case law, it's pretty clear that even under the looser language and the decisions of Maryland, what we have here would still not under any liberal construction be a gaming device. That's one question. Separate question is whether there's some sort of liberal construction available for the term loses money. And that there isn't one, because even in other statutes in Maryland, they make quite clear, first in Section 101 where they're talking about money or other things of value. They know how to say not money. And even more to the point in the slot machine statutes, it talks about specifically losing money or – sorry, let me just find the phrase. It's – it's – excuse me. Right, it's any piece of money, coin, token, or other object representation of and convertible into money. So that is smaller than thing of value but broader than the word money. And in that case, it was clear that things that have value in the world but are not money or convertible into money still do not qualify. And so when the Maryland statutes want to speak about things of value, they know how to say that. When they want to talk about money or things convertible into money, they know how to say that with respect to the Section 264B, which is the slot machine statutes, which is – But in Gaither, the slugs could not be converted into money, could they? So let me – Or could they? Tell me. Well, so the Gaither decision was predicated on the anti-counterfeiting laws and the facts of the case where you put in an actual nickel and what you get back is a piece of gum or something. And then from zero to 20 slugs, the slugs being found in telephone booths and being used as substitutes. Right, but the slugs couldn't be converted into money. So there was two pieces to that. One is that they were being used as money, and then two is that there was testimony taken. This was an action to decide whether or not a police – and I'm getting to your answer, I'm just going to give you one second – that whether the police commissioner would be enjoined from seizing these devices. And the lessor of the devices appeared to talk about whether they should be seized. There was evidence in Gaither taken that the lessees in their places of establishment in machines exactly like this were in fact using the machines to do a redemption of money when you got the free plays. And the court in Gaither said that that evidence had been stricken below, but that it thought that that evidence should be taken. And the court in Gaither goes on to say that it is morally certain that the reason that these machines were being used was because of the redemption ability of those machines to take the slugs and have the underlying establishments where they were being leased redeem them for actual dollars. So it actually says that the reason that it believes there is an actual problem here, and this is what's consistent with all the rest of the cases that follow in Maryland, is that these were machines that were specifically designed to be gambling devices and not just a free play device. And with respect to the holding in Gaither, it also makes quite clear that that's the basis of the holding. It does not base it on this ephemeral idea of the value of entertainment because it goes through – it does go through this whole thing about exciting the gambling spirit. But what the court says at the end is, but aside from the question of amusement, as we have already indicated, it is our conclusion reached from the record in this case that these devices were manufactured and are being used for the purpose of gambling. And that's what the holding was. It was based on the counterfeiting slugs and it was based on the fact of redemption that there was evidence of and the fact that the machines were set up. And if you follow those cases through Maryland, the 158 Gamings case and the Calvert County case both talk about this issue and frankly imply that the statement in Gaither about amusement being a thing of value cannot be true. So the court was focusing on what it called the redemption teacher is what you're saying. That's right. That's right. And it says that. It's at 243 where it says we are morally certain that the second of these reasons, that is the redemption feature or the substitution of the checks for money, is the controlling factor influencing the use of these devices by the public. And redemption in that circumstance you're saying is an actual redemption of the slug for cash money. Either cash or goods at the stores where the machines were being used. And that's the same when you travel through time in Maryland past Gaither. There's two other cases that talk about slot machines. And the issue that comes up later is, well, what if it really is a free play device where it's just giving you more free play, which goes directly to this question in Gaither of the price of amusement. And later cases culminating in the 158 devices case find that if it is a true free play, where there's not some other thing in the device for counting the free plays and voiding the free plays that indicates that it's being used for a gambling purpose, then it does not run afoul of the slot machine statutes. And it is not convertible into money. And the court went further to say that just because a free play has value, because it replaces the nickel or a quarter or whatever it is that you have to put in to start the machine again, that doesn't make it money or convertible into money. So entirely rejecting the idea that something like amusement is money or even convertible into money for purposes of the gambling laws. And that's in 158 machines, the site for which is 304 Maryland 404. So here chips are not money. The gold used to buy the chips are not money. None of that stuff exists in the actual world. So the gambling, the law statute, which requires you to lose money, doesn't apply. And that makes sense because if you think about what the transaction is here, it's a free-to-play game, but you are free to buy in-game items to advance your stronghold building or army building or whatever it is that you want for money, for machine zone. Yes, they sell it. But once that purchase is completed, you then have whatever you purchased to use however you want. You cannot redeem it back outside of the game from machine zone or anyone. It's like transferable between players, frankly. And so it has no ability to be valued outside the game. And the fact that something is sold for money is not sufficient to make it into money for purposes of the gambling law statutes. And, frankly, there's a good reason for that because what would you be valuing? Since there is no money, what is it that she would contend that she lost at the Game of War Casino? What would that be? Would your analysis change at all if you had to pay for the chips directly and you didn't buy virtual gold that gave you access to chips in the casino? Would that make any difference? So I don't think it would make a difference because it's still not a loss because once you make a purchase of whatever it is as the in-game item, it is now only usable inside the game and never anywhere else. So having made the purchase, it's now a sunk cost of whatever you decided to invest in the game. Either way, it's a purchase of entertainment. Yes. Yes, Your Honor. And because it has now no value anywhere else, so you have to use it in the game. So you'd better because otherwise you're not getting anything for the dollars that you spent on entertainment. And so casino chips, food, or stone, or whatever it is, it only has its use in the game. And so, therefore, if you use it, it's not a loss to you because it's the thing that you purchased for the purpose of using it. So if there's a loss here, there's a loss of dollars because you decided to buy something that is not refundable and not redeemable. But that's not a gambling loss and it's not money for purposes of the statute. I can go into the issue of whether something is or is not a gaming device. I would say that Title XII's . . . Under your theory of the case, though, we would not reach that because your view is that there's no money lost. Correct, Your Honor. Well, right, because there's no money involved in the game or casino. I will say I can address it. I just don't want to belabor things that don't need to be addressed in the sense that for the purposes of this case, there's no claim under the loss recovery statute. But for purposes of the world, the decision whether or not this is a gaming device and thus potentially illegalizing people's iPads or people that play it are now committing an illegal act for purposes of gambling. Those are all important questions. I just don't believe that one needs to get to whether it is a gaming device in order to decide that money is not involved here. That said, I don't think it's a gaming device because essentially for the same reasons. Yes, it's true that the definition of a gaming device includes wagers of things of value. It also includes the words wheel of fortune. But the definitional section doesn't actually criminalize them one way or the other. So it's not proof that it is illegal under the statute for purposes of Section 110 if one just found it to be a gaming device. And then second, the particular words used in whether or not something is a gaming device. A wheel of fortune is a physical object. I don't think it applies to an electronic object because not that you couldn't. If you tried to duplicate something exactly electronically, I don't think you're going to get around the statutes on that. But to have a per se violation of something by being a wheel of fortune, it has to be the physical object because the theory behind it being criminalized is you could take it out of your basement and take it over to the church lot or put it here or put it there. Same as in the Gaither case where it's set up to be used for gambling. That's a problem. That's not the issue here because this is just computer code. It's not set up for anything other than what it actually does and can't be used for any other purpose, which is why wheel of fortune shouldn't apply. And with respect to a gaming device, it essentially is set forth in our briefs, devolves to the same issue. She's not putting anything up and she's not winning anything that actually has actual value. Every case that's ever been dealt with in Maryland, you put in a nickel, you put in a quarter, you put in a dollar,  but there's consideration in dollars on at least one side and in most times both sides. That is what is missing here because there's no consideration in dollars on either side, and that's why this case is like all the other cases that have been recently decided with respect to these online types of games, that once you're in the game and you're playing with licensed entertainment, it is no longer real-world criminal gambling. If there's any other questions, I'm happy to take them. Thank you very much. Thank you, Your Honors. Mr. Zievsky, you've got some rebuttal time. Thank you, Your Honor. I think perhaps the hypothetical is the best way to look at the lose money issue. If I've got a concert ticket, which I have paid for, the organizer of the concert does not put on a concert, then I have lost money. I am out money for the concert ticket. The argument cannot be, well, you've got a concert ticket. You can use it for whatever you want. They didn't put on the concert, and I lost money. Here in this case, one might say, and my friend has argued, that my client effectively got what she paid for, but what she paid for, the money that she put up, was specifically for the purpose of gambling. It was for a gaming device. That is how she lost money here. There is money that she had. There is money that she no longer has. The way that she lost it was that Machine Zone took it from her by offering an illegal gaming device. I wanted to address a few other things that my friend brought up. He repeatedly referred to being able to exchange something for money or for goods. What Machine Zone offers in Game of War generally is goods. It may be virtual goods, but there are lots and lots of online goods that people sell for money. Microsoft Word doesn't exist in real life. I can't pick it up and hold it, but it is a valuable thing. Machine Zone's intellectual property, I'm sure that they would defend it intensely if it were ever before this court, but it is not something you can pick up and hold, yet it does, in fact, have real value. But the statute only says lose money. It doesn't say or any other thing of value. I think that that is an incredibly and unnecessarily narrow reading of the phrase lose money. Lose money means you have— It's a literal reading. I can read. It says lose money. If in a breach of contract case you have provided services, for example, which were not paid for, you can sue to get the value of those services. You can even say you lost money because you had to provide services that you were not recompensed for. It is the same idea here, losing money in the sense of they took money from her. He repeatedly said there's no money involved in the game of War Casino. It's simply false. The game of War Casino, every time you spin it, it costs about $0.60, and at $0.60 worth of the virtual currency, they make you buy before you can spin it. But that is not relevant to whether or not the money is lost, the money you had, and now it's gone. Finally, with regard to Gaither, Gaither is not predicated on anti-counterfeiting laws. Any counterfeiting portion of Gaither is a very small portion. It's mentioned in one sentence. But the Court does concentrate on the concept of redemption feature, though, doesn't it? Not exactly. No, Your Honor. Because it's the moral issue. I mean, it goes — it kind of goes on a tear. We are morally certain that the second of these reasons is the redemption feature. Yes, but the — The controlling factor influencing the use of these devices by the public. This being our conclusion, we as a court of chancery would be bound to refuse the injunction requested. I mean, it looks like the Court is really worried about the scamming aspect of this, that there is a redemption feature, even though you can't go up to somebody and say, here, I have a slug, give me money. And, Your Honor, there's a redemption feature here, too. What is it? It's the secondary market, which is just as prohibited as putting fake money into pay phones. You can't do that, either. Right? Definitely against the law. And it may be against this contract to put your account up on the secondary market and attempt to sell your gold. But that doesn't mean there's no redemption feature. There is, in fact, a redemption feature. It is the secondary market on which people are willing to buy this gold back for money. And that's one of the things that makes it gambling. Now, does Ms. Mason have to have used that? No. And one of the reasons she didn't use it, by the way, is because she didn't win anything. She lost. She lost over and over again. She lost thousands of dollars. How can you lost money if it can be redeemed? I mean, isn't it – Well, if you win, it can be redeemed. But if you lose, then they take it. Right? So she puts up her gold at the casino and spins the wheel. I mean, she paid her money down. I mean, Machine Zone is out of it after that, whether she wins or loses in the game. Machine Zone is not out of it. Why not? Because they have to – when she has gold, they have to provide her with the things that gold buys in their game, which they have to keep in limited. Which costs them nothing. That shouldn't – that does – well, first of all, it does cost them something because they cannot have unlimited gold available in the game. It would break their game. This is in their patent. You can't – the game depends on some people having more resources and some people having fewer resources. It's the only way the game works. So if they don't make this a scarce resource, then the game is broken. So in order for the game to work, yeah, they can only have a certain number of special kinds of swords or certain resources. Those are limited. So yes, it may not cost them anything to make, just like it doesn't cost Microsoft Word to allow you to download – it doesn't cost Microsoft to allow you to download another copy of Word or it doesn't cost the artist to give you a copy of a song. You're not arguing that you lose money if you have Microsoft Word. Microsoft – I'm not seeing the value of that analogy if that's what it is. Microsoft loses – if you steal Microsoft Word from Microsoft, have they lost any money? Well, not really, right? Because they can produce as many copies as they want. It's a digital good. It's infinitely reproducible. But that doesn't mean that it's not a good that's got a real market value that you have to pay for if you want it. This is the same thing that Machine Zone does. Their swords and the resources they offer, those are things that if you want them, you've got to buy them. You've got to pay money for them. Now, it may not – Machine Zone has put together a genius business model where the things that they sell and that people want don't cost them anything to make. But that doesn't mean that they're valueless. Does she win money? If she – Does she win money at this game? If she exchanges out her gold, if she wins and then she sells her gold on the secondary market, then she can cash out. What do people buy on the secondary market? Do they buy gold per se or do they buy her account? They buy her account with the gold in it because Machine Zone doesn't allow direct transfers of gold. So what they purchase is her account that has gold. I see that I'm out of time, so if there's no other questions. Thank you very much. Thank you, Your Honor. We will come down and –
judges: G. Steven Agee, Barbara Milano Keenan, Stephanie D. Thacker